[L. A. No. 5393. In Bank.—September 29, 1920.]

BRUCE C. BAILEY, Appellant, v. CITY OF HERMOSA BEACH (a Municipal Corporation), et al., Respondents.

[1] STREET LAW — CONSTRUCTION OF BRIDGES IN CITY STREETS — AUTHORITY UNDER VROOMAN ACT.—Section 2 of the Vrooman Act as amended in 1915 (Stats. 1915, p. 1400), authorizes the construction of bridges in the streets of a city without any limitation other than the general implied one that the bridges be for street purposes.

[2] ID.—DESIGNATION OF BRIDGE AS VIADUCT UNIMPORTANT.—The designation of a structure in street improvement proceedings as a viaduct instead of a bridge is wholly unimportant, where such structure is in fact a bridge.

[3] ID.—BUILDING OF VIADUCT ACROSS CITY STREET—AUTHORIZED IMPROVEMENT.—The building of a viaduct for the purpose of extending a city street across a ravine is authorized under section 2

of the Vrooman Act as amended in 1915 (Stats. 1915, p. 1400), since the structure comes within the specific enumeration of "bridges," and also within the general grant of authority to order an improvement of the street.

[4] ID.—ASSESSMENT ON FRONTAGE BASIS—MOOT QUESTION.—Where an assessment for a bridge extending a city street over a ravine is made according to benefits, the questions whether the Vrooman Act permits an assessment for such an improvement on a frontage basis, and if so, whether it is valid, are moot.

[5] ID.—ASSESSMENT ACCORDING TO BENEFITS — OMISSION OF PROPERTY—VALID ASSESSMENT.—An assessment for street improvements according to benefits is not invalid because all of the land in the assessment district is not assessed, in the absence of a showing of fraud or mistake.

[6] ID.—ASSESSMENT OF RAILROAD RIGHT OF WAY—CONSTRUCTION OF VROOMAN ACT.—The provision of the Vrooman Act that the right of way of a railroad within an assessment district shall be assessed in the same manner as other lands within the district, merely requires that such lands be not omitted because they are used for railroad right of way, and that if benefited they be assessed like other lands.

[7] ID.—NOTICES OF PASSAGE OF RESOLUTION OF INTENTION—FILING OF AFFIDAVITS OF MAILING—CONSTRUCTION OF ACT.—Under section 3 of the Vrooman Act requiring the city clerk to mail notices of the passage of the resolution of intention and to file affidavits of mailing, but providing that the failure to mail shall not invalidate the assessment, an assessment is not invalidated by failure to file such affidavits until long after the termination of the proceedings, where the notices were in fact mailed.

[8] ID.—BUILDING OF VIADUCT — ARRANGEMENT BETWEEN CITY AND RAILROAD COMPANY—NONASSESSMENT OF COMPANY—VALIDITY OF ASSESSMENT AS TO OTHER LANDS.—An arrangement between a city and a railroad company to extend a street across the latter's right of way by the building of a viaduct without expense to the railroad company, does not invalidate an assessment of other lands for the improvement, where the lands of the railroad company are not benefited by the improvement and the assessment does not have the effect of throwing on the other property owners the portion of the expense they should not bear.

[9] ID.—RETURN OF ASSESSMENT WARRANT—TIME.—An assessment warrant was returned by the contractor within thirty days from its date as required by section 10 of the Vrooman Act, where upon its return within the statutory period some question having arisen as to the original validity of the warrant, it was thereupon redelivered to the contractor, new demands made and a second return made within thirty days from such redelivery.

[10] ID.—DEMAND — DEFECT IN RETURN OF WARRANT — VALIDITY OF
ASSESSMENT AS TO DEMANDED LOTS.—The lien of an assessment
on lots as to which the return of the warrant shows demand for
payment was made is not destroyed by the failure of the return
to show demand on the owners of certain other lots.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   Charles Wellborn, Judge.   Affirmed.

The facts are stated in the opinion of the court.

A. W. Ashburn and Newlin & Ashburn for Appellant.

William W. Phelps, Arthur M. Ellis, Crouch & Crouch
and Gibson, Dunn & Crutcher for Respondent.

Paul S. Honberger, *Amicus Curiae.*

OLNEY, J.—This is an action by the owner of certain
lots in the city of Hermosa Beach to enjoin the issuance by
the city of certain street improvement bonds which, if issued,
would purport to be a lien upon the plaintiff's lots.   The
defendants are the city and certain of its officials and the
assignee of the contractor who did the work in payment for
which the bonds were to be issued.   Judgment went against
the plaintiff, who appeals.   His contentions on appeal are
that the assessment pursuant to which the bonds were to be
issued is void for several different reasons, and also that
even if the assessment were originally valid, the lien securing
it has been lost for certain failures in procedure subsequent
to the levy of the assessment.

The first and most fundamental contention of the plaintiff
is that the assessment is invalid because levied for work not
authorized by the act under which the assessment proceed-
ings were taken.   The work was the building of a viaduct
with its approaches over the right of way and tracks of a
railroad company which enters the city, and the act under
which the proceedings were taken was the Street Improve-
ment Act known as the Vrooman Act.   (Stats. 1885, p. 147;
Deering's General Laws, Act 3930.)   It seems that the
continuity of Eighth Street of the city was broken by the
right of way of the railroad company, whose tracks at this
point are in a cut or ravine some distance below the ground

and grade of the street on each side. The city arranged with the railroad company for the right to extend the street across the latter's right of way and tracks by the viaduct mentioned, without expense to the railroad company, and pursuant to this plan and arrangement the proceedings under attack were taken and the viaduct built.

The section of the Vrooman Act which specifies the kind of work which may be authorized by proceedings under it is section 2. Its material portions, as amended in 1915 (Stats. 1915, p. 1400), read as follows:

"Whenever the public interest or convenience may require, the city council is hereby authorized and empowered to order (1) the whole or any portion . . . of any one . . . of the streets . . . of any such city graded or regraded to the official grade, planked or replanked, paved or repaved, macadamized or remacadamized, graveled or regraveled, piled or repiled, capped or recapped, oiled or reoiled, and (2) to order the construction or reconstruction therein of sidewalks, crosswalks, culverts, *bridges*, gutters, curbs, steps, parkings and parkways, sewers, ditches, drains, conduits and channels for sanitary and drainage purposes or either or both thereof, . . . tunnels, *viaducts*, conduits, . . . to protect the same from overflow or injury by water, . . . (3) the construction or reconstruction in, over, or through property or rights of way owned by such city, of tunnels, sewers, ditches, drains, conduits and channels for sanitary and drainage purposes or either or both thereof, . . . and (4) to order any work to be done which shall be deemed necessary to improve the whole or any portion of such streets . . . "

The numerals in parentheses are not found in the act, but are inserted by us in the quotation for the purpose of distinguishing what appear to us to be clearly the leading subdivisions of the section. Subdivision 1 covers such work in general as grading or paving. Subdivision 2 covers the construction in the street being improved of such things as sidewalks, bridges, etc. Subdivision 3 covers the doing, other than in the street itself, of such work as tunnels, etc., for sanitary or drainage purposes, necessary or convenient in connection with the street or its improvement, and also the doing of other work the enumeration of which we have here omitted from the quotation as immaterial to the present case, but which likewise is necessary or convenient in con-

nection with the street or its improvement. Subdivision 4 is, of course, a general provision covering by its terms all work necessary to improve the street. It was undoubtedly intended to cover by it any work of that character which had failed of previous specific enumeration.

It will be noted that subdivision 2 specifically enumerates bridges as one of the structures, the construction of which in the street may be ordered under the act. It will also be noted that the words "for sanitary and drainage purposes" which occur at the end of the subdivision and of necessity operate to limit the purposes for which the structures referred to by them may be ordered, refer back only to "sewers, drains, conduits and channels," and do not refer back to "bridges." This is clear, since between the enumeration of bridges and the specification of the limited purposes of sanitation and drainage, there occurs the enumeration of "steps, parkings and parkways," to which plainly the requirement that the structure be for sanitary and drainage purposes is not applicable. [1] The act, then, authorizes the construction of bridges in the streets of a city without any limitation other than the general implied one that the bridges be for street purposes.

The structure ordered by the city council in this case, while it might be thought to be a bridge, was not so called in the proceedings authorizing it, but was termed a "viaduct." Upon this designation the plaintiff's first contention turns. It is that the only viaducts enumerated in section 2 of the act are enumerated in conjunction with "tunnels," that it was held in *Thompson* v. *Hance*, 174 Cal. 572, [163 Pac. 1021], that the purposes for which tunnels could be built under the Vrooman Act were limited by the subsequent words "to protect the same (the street) from overflow or injury by water," and that it follows that the same limitations must be placed upon the purposes for which viaducts may be constructed. The present viaduct was, of course, not for protection against water.

But the conclusion urged by the plaintiff does not follow from his premise. It is true the word "viaducts" as used in the act must be held to authorize only structures for protection against water, and if it were this word alone that had to be looked to for authority to order such a structure as the one here involved, it would follow that such a

structure was authorized only when required for that particular purpose. But the word "viaduct" is not the only word that can be looked to for authority. There is also, first, the word "bridges" and, second, the general grant of subdivision 4 authorizing the ordering of any work deemed necessary to improve the street.

[2] It is wholly unimportant that the proceedings ordering the structure call it a viaduct, and not a bridge. The only material question is, does the structure in fact come within the designation "bridge" as used in the act, no matter by what term it may be designated in the proceedings of the city. If it is in fact a bridge, its construction is authorized by the statute under that designation. The two terms "viaduct" and "bridge" are almost exact equivalents. There are slight shades of difference in their common use. one of which is that a structure for carrying water above the surface of the ground is more generally spoken of as a viaduct than as a bridge. This probably accounts for the act designating such structures as viaducts. But in designating structures for carrying roadways, such as the present, either word may be aptly used, although the word "viaduct," probably because of its Latin origin, is, when applied to such structures, rather confined to those of some size or to those of the Roman type of brick, masonry, or concrete arches. But its synonym of more humble Anglo-Saxon origin, bridge, covers all such structures, great or small, whatever their type of construction, and the present structure comes squarely within its usual meaning.

The structure in question was also authorized under the general grant of subdivision 4. That the bridge or viaduct was an improvement of the street would seem to be plain. The tunnel involved in *Thompson* v. *Hance* was held not to be such an improvement because, while it carried the traffic of the street, it was considered that it acted as a substitute for the street and in lieu of it. Here the viaduct is not a substitute for the street or in lieu of it; it is for the purpose of carrying the street across the ravine which it spans, and is in truth the very street itself at that point. [3] Our conclusion as to the first contention of the plaintiff is that the structure was authorized by section 2 of the act, both because it comes within the specific enumeration of "bridges,"

and because it comes within the general grant of authority to order an improvement of the street.

[4] Before concluding our discussion of this subject, however, there is a further argument of counsel which perhaps should be noticed. It is that if such a structure as that involved here may be ordered by proceedings under the Vrooman Act, it would follow that the assessment for paying for it might be levied on a frontage basis, since the act provides that work authorized under it may be paid for by assessment levied in that manner. Such an assessment in such a case as this would be manifestly most unjust, but the question as to its validity is moot, since the assessment in question is not of that character. It is true that in construing a statute, the fact that a certain construction will permit of the statute working in an extreme and unjust manner may well warrant the rejection of that construction. But that rule is confined to cases of construction where the meaning of the statute is doubtful. It has no application to such a case as the present, where the intent of the act to authorize such work as the bridge under consideration is plain. It may be that the statute does not in fact authorize a frontage assessment in such a case as this where the work is of more than local benefit, or that, if it does, it is in that respect invalid, but these questions are not presented. The act does plainly authorize the work, and the objection that the assessment to pay for the work might have been on a frontage basis cannot be made since the assessment was not of that character.

[5] The second objection of the plaintiff to the assessment is that it is invalid because the land of the railway company forming its right of way adjoining the bridge was not assessed, although within the assessment district. The answer is that this point was determined adversely to the contention of the plaintiff in the recent case of *Larsen* v. *San Francisco*, 182 Cal. 1, [186 Pac. 757]. There, as here, an assessment was levied upon the land within an assessment district to pay for a public improvement, upon the basis of the assessment being in proportion to the benefits accruing. There, as here, an appeal lay from the action of the subordinate official or officials apportioning the assessment in the first instance to the legislative body of the city. There, as here, some of the property within the

assessment district was not assessed, and the point was made that the omission rendered the assessment invalid. It was also urged that the assessment was invalid because not in fact made according to benefits. The two points were answered together and they are in fact one, for it would seem plain that making an assessment according to benefits involves an omission from assessment of property not benefited. (*Reclamation District* v. *Goldman,* 65 Cal. 640, [4 Pac. 676].) The answer made to these points in *Larsen* v. *San Francisco* was that in the absence of a showing of fraud or mistake, the assessment as levied in the first instance was valid unless appealed from, and if appealed from, was valid as finally approved by the legislative body of the city. In the present case, fraud or mistake was not shown. The trial court found in fact that the omitted land was not benefited, a finding very apparently justified in view of the character of the property omitted and its physical situation with reference to the bridge. The conclusion is that the omission in question did not invalidate the assessment. **[6]** This conclusion is not affected by the provision of the statute that the right of way of a railroad within an assessment district shall be assessed in the same manner as other lands within the district. All that the statute requires is that such lands be not omitted because they are used for railroad right of way, and that if benefited they be assessed like other lands.

**[7]** The third objection by the plaintiff to the assessment is that the city clerk did not file until long after the termination of the proceedings affidavits of the mailing by him to property owners within the assessment district of notices of the passage of the resolution of intention to do the work and that their lands would be assessed therefor. The objection is trivial. Section 3 of the act requires the city clerk to mail such notices and file affidavits of mailing, but it also provides that the failure of the clerk to mail the notices shall not invalidate the assessment. It is true that it does not provide that a failure to file affidavits of mailing shall not invalidate the assessment, but the substantial thing was the mailing, and if the assessment were valid even if the notices were not mailed, it would certainly not be invalid when they were mailed but formal proof of that fact merely was lacking. (*Smith* v. *Lightston,* 182 Cal. 41, [186 Pac. 769].)

[8]    A number of objections to the assessment are made by the plaintiff under different heads which all reduce themselves to the one objection that the lands of the railway company were either omitted from the assessment district entirely or else were not assessed, because of the arrangement between the city and the company that the bridge should be built without expense to the company. That arrangement in itself was a perfectly proper one. It would of course not be permitted, because of such an arrangement, to throw on to the other property owners the portion of the expense properly assessable against the lands of the railway company. If the lands of the railway company would be benefited by the improvement so that a portion of its expense should be assessed against them, then the arrangement would have to be carried out in some other manner than by failing to assess those lands. But if the lands of the railway company are not benefited by the improvement, then the failure to assess them does not have the effect of throwing on to other property owners a portion of the expense which they should not bear, and this is the only thing of which the other property owners would have the right to complain. As we have said, the trial court found in this case that the lands of the railway company were not benefited. This is a complete answer to the plaintiff's objection.

The contention of the plaintiff that even if the assessment were valid the lien of it has been lost is based upon the alleged facts: (1) That the assessment warrant was not returned by the contractor within thirty days after its date; and (2) that the return of the warrant when made showed a failure to make the necessary demand upon certain property owners. Section 10 of the Vrooman Act provides that the contractor, upon delivery to him of the warrant, shall make demand for its payment, either by personal demand upon the owners of the lands assessed, or by publicly demanding payment on the premises assessed. It also provides that the contractor shall return the warrant to the superintendent of streets within thirty days of its date, with a verified indorsement thereon stating the nature and character of the demand made. It further provides that if the contractor fails to return the warrant within the time and in the form prescribed, he shall thenceforth have no lien.

[9]  In regard to the alleged failure of the contractor to make the return within the prescribed thirty days, it is stated in the brief of plaintiff's counsel that the facts are that the warrant was dated September 19th, and delivered to the contractor on that day, but was not returned until October 20th, or more than thirty days thereafter. If this were all, the lien of the contractor was of course lost. But it is not all. The actual facts would seem to be that while the warrant was dated September 19th, it was returned on or before September 27th, that upon its return some question seems to have arisen as to the original validity of the warrant, that thereupon to avoid any question it was re-delivered to the contractor, new demands were made, and a second return made on October 20th. It is apparent from these facts that if the warrant was originally valid and validly issued, it was returned on or before September 27th and within the requisite time. On the other hand, if it were not valid until issued the second time, that is on or after September 27th, then it was returned on October 20th, that is, within thirty days. On either alternative, and there are but the two alternatives, it was returned within the requisite time.

[10]  As to the point that the return failed to show the necessary demand, the statement in counsel's brief is that the return shows a failure to make a demand on the owners of certain lots. The natural inference is that among these lots were those of the plaintiff, for it is plain that the lien of the assessment on the plaintiff's lots could not be lost by the failure of the contractor to make demand on the owners of other lots. An examination of the record, however, shows that the lots as to which it is claimed the return shows a failure to demand payment of the assessment are all lots owned by others than the plaintiff. The plaintiff therefore has no right to complain of the defect in the return in this respect, if in fact such defect exists.

Judgment affirmed.

Shaw, J., Lennon, J., Sloane, J., Wilbur, J., Lawlor, J., and Angellotti, C. J., concurred.