· [L. A. No. 6579. In Bank.—October 14, 1921.]

## HARRY W. McNUTT, Appellant, v. THE CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

[L. A. No. 6577. In Bank.—October 14, 1921.]

## HARRY W. McNUTT, Respondent, v. THE CITY OF LOS ANGELES, Appellant.

[1] STREET LAW—ACT OF 1913—JURISDICTION TO ORDER STREET IMPROVEMENT—GRADES.—The Street Improvement Act, as adopted in 1913, authorizes the physical improvement and change of grade of a public street independently of a concurrent establishment, change, or modification of the official or paper grade in the same proceeding; and a city council has jurisdiction to proceed under this statute with a view to contracting for street work in conformity to previously established grades.

[2] ID.—AUTHORITY TO ESTABLISH GRADE FOR TUNNEL.—The Street Improvement Act of 1913 confers authority to establish a grade for a tunnel to ·be used as a public thoroughfare.

[3] ID.—RESOLUTION OF INTENTION—DESIGNATION OF GRADE—REFERENCE TO PLANS AND SPECIFICATION.—A resolution of intention to improve a tunnel used as a public thoroughfare in a city is not insufficient, although not designating the grade upon which the work is to be done, where it provides that the work shall be constructed as shown on various plans and specifications referred to for more particular description and on file in the city engineer's office, as it will not be inferred that all the information required was not contained in such specifications, in the absence of a showing to the contrary.

[4] ID.—NOTICE OF PROPOSED IMPROVEMENT—AFFIDAVIT OF.—Under the Street Improvement Act of 1913, the making and filing of an affidavit by the city clerk of mailing post-cards to the property owners within the assessment district containing the notice required by the statute of the proposed improvement, before the work is ordered, is mandatory and jurisdictional as affecting the power of the city council to pass an ordinance ordering the performance of the work; and such an affidavit is insufficient and the city council acquires no jurisdiction to order the work, where the affidavit refers to the location of the work proposed as, "for the improvement of Broadway tunnel," while the resolution of intention included the improvement of "Broadway tunnel between Temple Street and Sunset Boulevard, California Street between

North Broadway and Hill Street, North Broadway between Temple Street and California Street."

[5] JUDGMENTS—CONCLUSION OF LAW—APPEAL.—An erroneous conclusion of law does not constitute a cause of reversal if the judgment is right.

[6] STREET LAW—UNLAWFUL CHANGING OF GRADE—ACTION FOR DAMAGES—INTEREST.—In an action for damages against a city arising from the unlawful changing of the street grade in front of plaintiff's premises by the city, the claim being one for unliquidated damages does not draw interest before judgment.

[7] ID.—STATE OR MUNICIPALITY—INTEREST.—As against a state or municipality thereof interest cannot be recovered except under special statutory authorization.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles S. Burnell, Jess E. Stephens, Wm. P. Mealey and J. H. O'Connor for Appellant in L. A. No. 6577 and for Respondent in L. A. No. 6579.

Herbert Cutler Brown and Delphin M. Delmas for Appellant in L. A. No. 6579 and for Respondent in L. A. No. 6577.

SLOANE, J.—The plaintiff in this action recovered judgment against the city of Los Angeles, the defendant, in the sum of five thousand dollars for damages resulting from changing and lowering the grade of streets bordering on plaintiff's lot. Both parties have appealed from the judgment.

The defendant appeals on the ground that the street work complained of was done in conformity with the Street Improvement Act of 1913, and that plaintiff, having failed in such proceedings to make his claim for damages as required by the act, was not entitled to recover in this action.

The plaintiff appeals on the ground that he was entitled to interest upon the amount of his recovery, which was not included in the judgment.

---

6. Right to interest on damages from change of grade of street, note, 28 L. R. A. (N. S.) 66.

The appeals will be considered together in this opinion.

It is conceded by the defendant that the plaintiff was entitled to recover damages unless the city of Los Angeles had jurisdiction to carry on the work complained of under the Street Improvement Act of 1913, [Stats. 1913, p. 954].

The plaintiff was the owner of a city lot at the northwest corner of the intersection of California Street and Broadway. A tunnel for street purposes had been constructed on Broadway in the year 1908 through a steep hill lying northerly from the intersection of the streets named. The southerly opening of the cut to the entrance of this tunnel, as originally established and constructed, appears to have been approximately upon the grade of plaintiff's lot.

The change for which damages are claimed consisted of cutting down the grade at the southern entrance of the tunnel and along plaintiff's land to a depth of upward of eighteen feet.

This tunnel was originally constructed under an act of the legislature approved March 19, 1889, and acts amendatory thereto, and in accordance with plans and specifications adopted by the legislative body of the city, and was accepted and thereafter used as a public way by the city for many years. There seems to have been no formal establishment of the grade for the floor of the tunnel at the time it was constructed.

It is alleged in the third amended complaint, the averments of which are stipulated and held by the findings to be true, that "on the ninth of July, 1912, the council of the city duly adopted an ordinance changing and establishing the grade of California Street and of North Broadway," and that the grades thus established are the grades to which Atkinson (the contractor with the city) reduced these streets by the work hereinabove mentioned. The complaint also alleges that on the 25th of March, 1913, the council adopted an ordinance establishing the grade of the Broadway tunnel, in conformity to the grade thereafter used and conformed to by said contractor.

At any rate, if any authority existed for changing the physical grade of the streets and tunnel adjacent to plaintiff's lot under the proceedings thereafter had, it was by action of the city council taken prior to and independently of the proceedings under the act of 1913.

Plaintiff states his grounds of objection to the work complained of as follows:

"1. (a) The legislative body of the city of Los Angeles had no power under the Street Improvement Act of 1913 to order the grading and improvement of California Street, or North Broadway tunnel, because the official grade of these streets, highways, or thoroughways had already been established before the passage of the ordinance of intention to order such grading and improvement (passed October 9, 1913), and, as appears upon the face of said ordinance, the grading and improvement of said streets, highways or thoroughfares was ordered to conform to the official grade thus theretofore established.

"2. The ordinance adopted by the legislative body of the city of Los Angeles on March 25, 1913, purporting to establish the grade of the Broadway tunnel was illegal and void. Thus, for the following reasons:

"(a) There was, at that time, no law of this state, and no provision of the charter of the city, which authorized that body to establish the grade of a tunnel used for purposes of public travel.

"(b) As appears by the facts found, the grade of the Broadway tunnel had been officially established in the year of 1898. In accordance with the official grade thus established the tunnel had been constructed, and upon that grade the public travel had passed for twelve years and more. No ordinance changing that grade could legally be adopted under the pretense of originally establishing an official grade, even if it were assumed that power existed either to establish or change the grade of such tunnel.

"3. The Street Improvement Act of 1913 has no application to such underground tunnels as was the Broadway tunnel; and, therefore, all the proceedings set forth in the findings of fact, so far as they affect that tunnel, are illegal and void.

"4. Were it conceded that under the Street Improvement Act of 1913 the legislative body of the city of Los Angeles was invested with the power to order done the improvements described in its ordinance of intention adopted on the eighth day of October, 1913, that body had no power, under the facts here found, to pass the ordinance ordering said work to be done. And this for the following reasons:

"(a) The city clerk never made or filed the affidavit required by section 3 of said act.

"(b) The affidavit which the clerk did make shows upon its face that the notices which he mailed did not conform to the requirements of said act."

[1] A debatable question arises under the first objection above stated. Does, or does not, the Street Improvement Act as adopted in 1913 authorize the physical improvement and change of grade of a public street independently of a concurrent establishment, change, or modification of the official or paper grade in the same proceeding?

The language of such act as it stood when the work here was undertaken, so far as it has any bearing on this point, and eliminating for the sake of clarity portions of the text which have no relation to the point at issue, is as follows (Stats. 1913, p. 954 et seq.):

Section 1. "Whenever the public interest or convenience may require, the legislative body of any city is hereby empowered to *establish*, or *change*, or *modify the grade of any public street*, lane, alley, court, place, or right of way, in said city . . . *and* . . . to order the whole or any part of such public street . . . to be improved to conform to *such official grade*."

Section 2. "Before ordering any establishment, change or modification of grade or any improvement described in section one herein, the said legislative body shall pass an ordinance or resolution declaring its intention to do so . . . *designating the proposed grade*, describing the proposed improvement, fixing a time and place for the hearing of protests . . . and specifying the exterior boundaries of the district of land to be benefited by said improvement."

Section 5. "If no protests are filed . . . or if protests are filed and after hearing are denied . . . the legislative body shall have jurisdiction to order the establishment, change or modification of grade *and* the improvement described in the ordinance or resolution of intention. Having acquired such jurisdiction it shall by ordinance or resolution order the establishment, change or modification of grade *and* such improvements to be made."

Section 46. "The term improvement includes the establishment, change or modification of grade, if any, and all of the improvements mentioned in section one of this act."

The title to this act declares it "An act for the establish-ment and change of grade of public streets . . . and pro-viding *for the improvement thereof*, in cases where any damage to private property would result from such im-provement."

The italics used in the foregoing quotations are supplied to emphasize the construction contended for by plaintiff.

In defining the scope and purpose of this act it is ap-parent that all references to change of grade and improve-ment work are made conjunctively. The only constructive basis for a different interpretation is the use of the term "if any," in section 46, referring to the preceding words "establishment, change, or modification of grade."

Counsel for the appellant argue that if a concurrent estab-lishment or change of grade was an essential and pre-requisite condition in every instance to any physical im-provement of a street, under this act, the expression "if any" could find no place or significance in the application there given to the word "improvement."

There is force in the suggestion. The word "improve-ment," as used in the act, is designed to cover proceedings which authorize the physical grading of the street, and a concurrent change of the official grade, "if any."

But a more potent reason for such construction comes from a consideration of the history of this act. The legis-lature of 1909 enacted two separate measures for street improvement, one known as the Change of Grade Act (Stats. 1909, p. 1018), which provides a procedure for changing the official or paper grades of streets, without any concurrent physical work thereon, and the other known as the Hammond Act (Stats. 1909, p. 1042), which established a proceeding for actual street work where the grades were already estab-lished. But no provision was made in either act for a condition where it might be desirable to change or estab-lish a grade and authorize the work of improvement con-currently.

Construed as appellant contends for, the Street Improve-ment Act of 1913 here under consideration very sensibly remedies this omission by permitting in the same proceeding the governing body of a city to take proceedings for the physical grading and improvement of a street, and at the

same time where there was no official grade, or a change of grade was desired, to establish such grade.

The act of 1913, it will be seen by comparison, while it repeals the Hammond Act of 1909, is a substantial re-enactment thereof, with the incorporation of the provision for establishing or changing the grade concurrently where such need exists; and the manner in which the amendment of the statute is made and the obvious reasons therefor would indicate that it was not intended to change the operation of the law in cases where grades were already established, but merely to supplement the former provision by allowing concurrent changes of grade where required, without the necessity of a separate and independent proceeding.

It is true that the act of 1913 is at least open to the criticism of being ambiguous and uncertain as to its interpretation in this respect. The legislature has apparently fallen into the error so common in legal parlance of using the conjunctive article "and" where the disjunctive "or" is intended. But this can be disregarded if the obvious purpose of the act and the intention indicated by other phraseology justify it.

It is strongly insisted by respondent that the subsequent amendments to section 1 of this act show the legislative interpretation to have been that the statute did not in its original form authorize actual grading work, except where the official grade was changed or established in the same proceeding.

Section 1 of the act of 1913 was amended in 1915 (Stats. 1915, p. 1217) by adding a proviso "that wherever the official grade of any such public street . . . has been theretofore established, changed or modified in any manner authorized by law, the legislative body of said city may order such public street . . . to be improved under the provisions of this act."

The conclusion urged by respondent does not necessarily follow. It is often the function of an amendment to remove just such uncertainty and ambiguity as it is claimed exists here, by expressing the point involved in obscurity in language that cannot be misunderstood (*Independent School Dist.* v. *Kelley*, 120 Iowa, 119, [94 N. W. 284]; *Alexander* v. *Mayor of Alexandria*, 5 Cranch, 1, [3 L. Ed. 19, see, also, Rose's U. S. Notes]).

It is obviously the part of reason and common sense that the legislature should have intended by the original enactment of the act of 1913 to supplement the law as announced in the Hammond Act of 1909, by extending its scope to apply to the improvement of streets where an establishment of grade has not already been made, by providing a concurrent procedure for that purpose where needed, rather than to limit its application alone to streets where such concurrent change of grade is required, and every intendment of the statute should be applied to the broader construction.

We are of the opinion, therefore, that the city council had jurisdiction to proceed under this statute with a view to contracting for the work complained of in conformity to previously established grades.

There is no sufficient justification for the collateral attack in this action upon the regularity and validity of the proceedings under which the official grades of the Broadway tunnel and California Street and North Broadway were established.

The complaint itself alleges that the grades on California Street and North Broadway to which the contractor conformed were duly adopted by an ordinance of the council on the 9th of July, 1912. As we gather from the record, no part of the tunnel proper was upon or contiguous to the property of plaintiff. That part of the street lying along the North Broadway side of plaintiff's lot, as we understand, was occupied by the cut complained of leading to the southerly opening of the tunnel.

So far as damage to plaintiff's land is concerned, the change of grade of the tunnel is not material. It is only as the right to lower the floor of the tunnel affects the jurisdiction of the city to proceed in the matter does it become significant. The complaint also alleges the adoption of an ordinance on the 25th of March, 1913, establishing the grade to which the contractor later lowered the floor of the tunnel, and also sets out such ordinance as exhibit "C" of the complaint.

Nothing appears in the complaint attacking the regularity or validity of the proceeding for the adoption of these ordinances.

[2]  The objection that there was no authority under the Street Improvement Act of 1913 to establish a grade for a tunnel to be used as a public thoroughfare is not pressed in respondent's brief.  In any event, we think the act sufficiently authorizes tunnel work.   Section 1, in authorizing streets to be improved to establish grades, includes as part of the authorized work the construction of "culverts," "bridges," and "tunnels."   The construction of a bridge over a chasm or the boring of a tunnel through an obstructing hillside would be integral parts of the actual highway improvement and not a · mere accessory structure. (*Bailey* v. *Hermosa Beach*, 183 Cal. 757, [192 Pac. 712].) In the case of *Thompson* v. *Hance*, 174 Cal. 572, [163 Pac. 1021], which held that tunnel construction was not authorized under the Vrooman Act as amended in 1911, the court was considering a statute which only mentioned tunnels as obviously intended for drainage purposes in connection with the street, the reference being to "tunnels, sewers, ditches . . . conduits and channels for sanitary and drainage purposes."

[3]  Plaintiff further attacks the jurisdiction for this procedure on the ground that the resolution of intention did not designate the grade upon which the work on the tunnel was to be done.   The act of 1913 provides that before ordering any street work under such act the legislative body of the city "shall pass an ordinance or resolution declaring its intention to do so . . . designating the proposed grade." It may be questioned if the requirement to designate "the proposed grade" applies where the grade is already established, but rather refers to proceedings where an establishment or change of grade is contemplated concurrently with the physical improvement of the street.   The Hammond Act of 1909, upon which we have seen the present act is based and which only dealt with street improvements where the grades were already established, did not direct any reference to the grade in the resolution of intention.   In other words, in this proceeding there was no "proposed grade," the grade having been previously established.

This resolution does, however, provide that the ·work shall be constructed as shown on various plans and specifications referred to for more particular description, and on file in the city engineer's office.

It is not alleged in the complaint, does not affirmatively appear from the resolution itself, and is not found by the court, that all the data required to be shown were not contained in the plans and specifications referred to.

If this reference makes the specifications a part of the resolution of intention, we cannot infer that all the information required was not contained in such specifications.

In *Chase* v. *Trout*, 146 Cal. 350, 368, [80 Pac. 81], Mr. Justice Shaw writing the opinion, it is held that a reference to plans and specifications on file will serve to make sufficient the description of the work in a resolution of this character where by the terms of the description in the resolution itself it would be void, and that it is not required that such plans and specifications should be published as part of the resolution.

In the case before us counsel for plaintiff recite in their notice of motion for judgment in plaintiff's favor on the findings that it appears upon the face of the ordinance that "the grading and improvement of said streets and highways or thoroughfares, was ordered to conform to the official grade thus theretofore established."

[4] Another and more serious objection to the validity of these proceedings under the Street Improvement Act of 1913 is the alleged failure of the city clerk to make an affidavit before the work was ordered that he had mailed postal cards to the property owners within the assessment district containing the notice required by the statute of the proposed improvement.

Section 3 of the act requires that the city clerk shall immediately upon the passage of the resolution of intention mail to each of such property owners a postal card giving notice of the passage of the resolution of intention, "the name of street to be improved and between what streets located." It is then further provided as follows: "The city clerk shall immediately upon the completion of the mailing of such cards file in the office of the superintendent of streets an affidavit setting forth the time and manner of his compliance with this requirement, provided, that the failure of the city clerk to address such cards or any of them to the true owners of said property, or to mail said cards, or the failure of the property owners to receive the same, shall in no wise affect the validity of the proceedings or prevent

the legislative body from acquiring jurisdiction to order the work; provided, however, that the legislative body shall not pass any ordinance or resolution ordering the work until such affidavit is made and filed as herein prescribed.''

The making and filing of this affidavit is mandatory and jurisdictional as affecting the power of the city council to pass an ordinance ordering the performance of the work. The reservation made in the proviso, that failure in fact in properly addressing or mailing or delivering said cards shall in nowise affect the validity of the proceedings, is clearly intended to avoid the uncertainty and complication that would inevitably arise if the proceeding could be attacked for failure to reach any one or several of the interested property owners with such cards, by making the affidavit' conclusive evidence of the facts alleged; but the negative provision contained, that such failure in the actual making and delivery would not invalidate the proceedings or destroy jurisdiction, coupled with the final proviso that the legislative body ''shall not pass any ordinance or resolution ordering the work until such affidavit is made and filed as herein prescribed,'' emphasizes the intention of the legislature to make such affidavit a condition of jurisdiction to take further action.

There was an affidavit made and filed in this instance. The vital question is: Did it meet the substantial requirements of the statute? Obviously, an affidavit by the clerk that he had mailed notice of intention to pave the Appian way would not suffice in this case. In order to conform to the requirement of the statute the affidavit must show that the notice mailed was in compliance with the requirements of the law. When this is done the affidavit becomes conclusive evidence that such notice was properly directed, mailed, and delivered, but the notice itself must, of course, conform to the statute.

The notice which the clerk did make affidavit that he had mailed was as follows:

''Los Angeles, Cal., Oct. 22, 1913.

''You are hereby notified that on the 9th day of October, 1913, the legislative body of the city of Los Angeles, California, by virtue of the street improvement act of 1913, passed an ordinance (resolution) of intention numbered 28,413—(New Series)—for the improvement of Broadway

tunnel.   Protests will be heard on the 19th day of November, 1913, at the hour of 9· o'clock A. M. in the council chamber of said city.

"Your property is in the district to be assessed for this improvement.

"Chas. L. Wilde,

"City Clerk."

Three distinct improvements were included in the resolution of intention—Broadway tunnel between Temple Street and Sunset Boulevard, California Street between North Broadway and Hill Street, North Broadway between Temple Street and California Street.

In the notice certified to by the affidavit the only reference to the location of the work proposed is in the words "for the improvement of Broadway tunnel." Is this the notice called for by the statute and required to be certified to in the affidavit?

The change in the streets for which plaintiff claimed damages was not in the Broadway tunnel but on North Broadway and California Street. He may have been indifferent to. improvements to be made in the tunnel and willing to bear his portion of the assessment therefor without further investigation. The law required specific notice of the work proposed on these other streets. There was nothing in the notice certified to that can be said to have put a property owner on inquiry as to the inclusion of any other work than the improvement of the tunnel, and there was nothing on the face of the notice to suggest that the proposed improvement would extend to property in the other localities. If there had been it might well be said that the property owner was put on inquiry and should have gone to the records for particulars.

That it was not the legislative purpose to make reference to the resolution of intention to help out the notice in question is indicated by the provision of section 44 of the act that in "all resolutions, notices, orders and determinations subsequent to the notice of street work a description of the work by reference to the ordinance or resolution of intention shall be sufficient." This notice was not subsequent but prior to, or·at least concurrent with, the notice of street work.

The decision of the court of appeal, *Beale* v. *City of Santa Barbara,* 32 Cal. App. 235, 243, [162 Pac. 657], cited by

counsel for appellant, does not apply here, for the reason that such affidavit of mailing postal notices there involved was not made a condition precedent to ordering the work, under the Vrooman Act as then in force, which was under consideration in that case.

Neither is there room for application of the rule referred to in *Bailey* v. *Hermosa Beach,* 183 Cal. 757, [192 Pac. 712], that jurisdiction does not depend upon record evidence or affidavit of notice, but upon the fact of notice.

In this case the statute makes the affidavit of mailing the exclusive and conclusive proof of the fact of notice, and there is no allegation or offer of other proof that the law was complied with. In fact, the affidavit itself contains the proof that the notice mailed was not the notice required by the statute.

We see no escape from the conclusion that in this absence of a substantial compliance with the law relating to the mailing of such notice there was a failure of jurisdiction to order the street improvements from which plaintiff's claim for damages arose.

It follows that plaintiff was not estopped by such attempted proceedings from pursuing his relief in this action.

In view of the conclusion thus reached upon the merits of this proceeding it is perhaps unnecessary to pass upon plaintiff's objection that the appeal was not properly taken.

We have not heretofore referred to the fact that judgment in this action was originally for the defendant, and that such judgment was vacated and a judgment on the findings entered for plaintiff, in pursuance of a motion under section 663 of the Code of Civil Procedure. The appeal is from this final judgment, and it is the contention of plaintiff that it should have been from the order directing the new judgment. Without discussing the merits of the question thus raised, it is sufficient for the purposes of this decision that a motion to dismiss this appeal on the grounds stated was heretofore presented to this court and denied.

The circumstances attending the rendition of the new judgment, however, become material in the consideration of the appeal taken by plaintiff.

The prayer of the third amended complaint was that plaintiff recover judgment for five thousand dollars damages, with interest thereon from the first day of September, 1915.

187 Cal.—17

In granting the motion vacating the first judgment for defendant and directing judgment for the plaintiff, the order of the court recites as follows: "The plaintiff's motion to set aside and vacate the judgment (based upon findings of fact made by the court) heretofore rendered against him and entered on the twenty-fourth day of December, 1919, and to enter upon said findings a judgment in the plaintiff's favor in accordance with the prayer of his third amended complaint, filed here on the 24th of November, 1919, came on regularly to be heard on the twentieth day of January, 1920, the parties appearing by their respective counsel, whereupon, after argument heard from both sides, the court being duly advised, grants said motion and orders that judgment be entered accordingly."

The judgment thereafter made and entered, after reciting the foregoing order, decrees as follows: "Wherefore, it is now ordered, adjudged, and decreed that the conclusions of law heretofore announced be amended and corrected by striking out said conclusions as the same now appear in the findings of fact and conclusions of law and substituting in lieu thereof the following: As conclusions of law from these facts the court decides that the plaintiff is entitled to judgment according to the prayer of his third amended complaint. And it is further ordered, adjudged, and decreed that the judgment heretofore entered herein on the twenty-fourth day of December, 1919, be and the same is hereby set aside and vacated, and that the plaintiff do have and recover from the defendant the sum of five thousand dollars together with his costs."

Thereafter, on the ninth day of April, 1920, judgment was entered for the plaintiff for five thousand dollars damages, but without interest. Plaintiff at the time objected to the entry of a judgment without interest as not being in accord with the order of the court directing such judgment, but the court overruled the objection and caused the judgment to be entered without interest, to which ruling plaintiff excepted.

No question is raised by the defendant as to the regularity of the proceedings on the motion under section 663 of the Code of Civil Procedure. The new judgment is, therefore, to be considered precisely as though it were founded on original findings of fact and conclusions of law.

Plaintiff's rights in the premises are to be measured by the findings of fact rather than the conclusions of law, and if the facts do not entitle him to interest, he is not prejudiced by the judgment.

The trial court, under section 663 of the Code of Civil Procedure, still had jurisdiction to further amend its conclusions of law if they did not conform to the findings of fact. This, perhaps, would have been the consistent course, but if under the findings of fact plaintiff is not entitled to recover interest, he would not be entitled to relief on this appeal. [5] An erroneous conclusion of law does not constitute a cause of reversal if the judgment is right. (*Spencer* v. *Duncan,* 107 Cal. 423, [40 Pac. 549]; *Helm* v. *Duncan,* 3 Cal. 454; *Bleven* v. *Freer,* 10 Cal. 172.)

As has already been shown by the record, this judgment was for damages arising from the unlawful changing of the street grade in front of plaintiff's premises by the city of Los Angeles.

[6] The claim sued on was unliquidated and could not draw interest before judgment even as against an individual defendant. (*Perkins* v. *Blauth,* 163 Cal. 782, [127 Pac. 50]; *Cox* v. *McLaughlin,* 76 Cal. 60, [9 Am. St. Rep. 164, 18 Pac. 100].)

[7] As against the state or a municipality thereof interest cannot be recovered except under special statutory authorization. (*Engebretson* v. *City of San Diego,* 185 Cal. 475, [197 Pac. 651]; *Savings & Loan Society* v. *San Francisco,* 131 Cal. 356, 363, [63 Pac. 665].)

The appeal by plaintiff is, therefore, also without merit.

The judgment is affirmed.

Lennon, J., Lawlor, J., Shurtleff, J., and Angellotti, C. J., concurred.