[Sac. No. 1956. Department Two.—September 24, 1912.]

C. PERKINS, Respondent, v. THEO. BLAUTH, CHARLES F. SILVA, and C. M. GOETHE, Defendants and Appellants; P. N. ASHLEY, and BAY AND RIVER DREDGING COMPANY (a Corporation), Defendants.

Trespass to Land—Pleading—Insufficient Averments of Ownership and Right of Possession—Defect Cured by Answer and Trial.—Where the complaint in an action to recover damages for injuries to land avers that at all the times therein mentioned the plaintiff was the owner of the property, but fails to specifically aver that he was the owner and in possession at the time of the commencement of the action, the defect is cured if the answer tendered issue on the question of ownership by denying that plaintiff was at any time or at all the owner or in the possession of the property, and the trial of the cause was had upon the theory of the issue thus joined.

Id.—Consent of Plaintiff to Trespass Need not be Negatived.—The complaint in an action to recover for an unlawful trespass to land need not aver that the acts constituting the trespass were done without the plaintiff's consent. There is no presumption that a plain-

tiff consented to an unwarranted invasion of his personal rights or rights of property.

ID.—SUFFICIENCY OF COMPLAINT—GENERAL DEMURRER.—A complaint which alleges, in effect, that the defendants cut a canal through the natural bank of a river, and after so doing failed to take proper precautions to prevent the waters of the river from flooding plaintiff's land, and that the waters of the river did in fact flood his lands to his injury, sufficiently states a cause of action as against a general demurrer.

ID.—RECLAMATION DISTRICT—LIABILITY OF TRUSTEES FOR NEGLIGENCE.— The trustees of a reclamation district are personally liable to a landowner for injury occasioned to his property by the negligent performance of their duty. The fact that the district might also be responsible would not relieve them from liability.

ID.—AGENT LIABLE FOR TORTIOUS ACT.—If a tortious act has been committed by an agent acting under authority of his principal, the fact that the principal thus becomes liable does not exonerate the agent from liability.

ID.—LIABILITY OF PUBLIC OFFICERS FOR MISTAKES OF JUDGMENT—LIABILITY FOR NEGLIGENCE.—The rule that under circumstances where discretion is vested in public officers, they are not responsible for mistakes of judgment when they have honestly, though mistakenly, exercised their discretion, cannot be extended so as to exonerate an officer for an act which would have been proper if performed by him with due care, but which has resulted in injury to another because of the performance by him without due care.

ID.—LIABILITY OF MUNICIPAL CORPORATIONS FOR DERELICTION OF OFFICERS—PERFORMANCE OF DUTY IMPOSED BY LAW.—Municipal corporations are not liable for dereliction or remissness of municipal officers or agents in the performance of public or governmental functions of the city, or in the performance of duties imposed upon those officers which are prescribed and limited by express law; and when an injury results from the wrongful act or omission of a municipal officer charged with duty prescribed and limited by law, the doctrine of *respondeat superior* is inappliable. The officer is not treated as the agent or servant of the corporation in the performance of such duty, but is held to be the servant and agent of and controlled by the law, and while for his tortious acts he will be held responsible, the municipality will not.

ID.—ACT COMMANDED BY MUNICIPALITY—NEGLIGENCE OF OFFICER IN PERFORMANCE.—Upon the other hand, if the act is one commanded by the municipality itself, if inherently wrong, the municipality and the agent who performed will both be liable. If the injury results, however, not from the wrongful plan or character of the work, but from the negligent or improper manner in which it is performed, the one so negligently acting will always be responsible, and the public

corporation may or may not be responsible, depending upon the relationship which it may sustain to that agent.

ID.—TAKING OR DAMAGING PRIVATE PROPERTY WITHOUT COMPENSATION. Wherever, however, the injury complained of is the taking or damaging of private property for public use without compensation, then under the guarantee of the federal constitution against invasion of the private rights of property, neither the state itself nor any of its agencies or mandatories may claim exemption from liability.

ID.—INDEPENDENT CONTRACTOR—QUESTION OF CONTRACTUAL RELATION WHEN ONE OF LAW.—In cases where the nature of the contract between the parties establishing their relationship is in dispute, and the evidence thereon conflicting, the question of employee or independent contractor may properly be left to the jury under appropriate instructions. But where the evidence is not conflicting and the contract between the parties is without dispute, the question of dependent or independent contractual relationship is one of law for the court.

ID.—CONTRACT FOR DREDGING WITH RECLAMATION DISTRICT—MAKING CUT THROUGH RIVER BANK AND LEVEE—CONTROL OF WORK BY TRUSTEES.—A dredging company, acting under a contract with a reclamation district for the doing of certain dredging work, is not an independent contractor in the performance of the work of cutting a ditch through the bank of the Sacramento River and an adjacent levee so as to admit a dredger into the lands of the district, where the trustees of the district not only in fact directed what work should be done and how it should be done, but the contract itself specifically reserved to them the right of direction and control of the work, including the right of control in the specific matter of repairing the cut so made in the levee.

ID.—FAILURE TO OBJECT TO EVIDENCE—REFUSAL TO STRIKE OUT.—Where no objection was made to the admission of evidence at the time it was given, a motion to strike it out after the witnesses had left the stand and the case was closed was properly denied.

ID.—MEASURE OF DAMAGES FOR FLOODING LAND.—In an action to recover damages for the flooding of the plaintiff's land and the consequent deposit of sand thereon, as the result of the defendant's negligence, the measure of damages is the difference in the market value of the land before and after the injury.

ID.—INTEREST ON AMOUNT OF VERDICT—UNLIQUIDATED DAMAGES.—Such damages being unliquidated until assessed by the jury, interest upon their award from the date of the injury is not allowable.

APPEAL from a judgment of the Superior Court of Yolo County and from an order refusing a new trial. N. A. Hawkins, Judge.

The facts are stated in the opinion of the court.

P. S. Driver, Devlin & Devlin, Charles W. Thomas, and Charles W. Thomas, Jr., for Appellants.

Arthur C. Huston, and Harry L. Huston, for Respondent.

HENSHAW, J.—Plaintiff sued defendants for damages in tort for injuries caused to his land. It is charged that the defendants cut a ditch some sixty feet wide and twelve feet deep through the bank of the Sacramento River and through a large levee constructed about one hundred and fifty feet back from the river margin, to permit the passage of a dredger; that after so excavating and cutting the bank, the defendants failed to erect a suitable dam or other fill sufficient to prevent the water of the Sacramento River from flowing through the ditch or canal thus dug and upon plaintiff's land; that by reason of its negligence in this respect the waters of the Sacramento River did flow through this canal upon plaintiff's land, inundating the same, carrying large deposits of sand, destroying fences, removing the soil, and injuring it in the amount sued for. The defendants were Blauth, Goethe, and Silva, trustees of Reclamation District No. 785, Ashley, the surveyor and engineer of the district, and the Bay and River Dredging Company, which cut the canal. The Reclamation District was not made a party to the action, and a nonjoinder was set up by defendants' answer. It was proven at the trial that the defendants Blauth, Goethe, and Silva were acting in their official capacity as trustees of the Reclamation District. A nonsuit was granted as to the Bay & River Dredging Company, and as to Ashley, the surveyor and engineer of the district. The jury rendered a verdict in favor of the plaintiff against the defendants Blauth, Goethe, and Silva. From the judgment which followed and from the order denying their motion for a new trial these defendants appeal.

1. The complaint sufficiently states a cause of action. While the complaint alleges that at all times therein mentioned plaintiff was the owner of the property, it is contended that it does not allege that he was the owner and in possession at the time of the commencement of the action, and it is argued that for all that appears to the contrary at the time of

CLXIII Cal.—50

the commencement of the action plaintiff may have sold the property, and with it his right to damages for its injury. All, however, the plaintiff is required to show in this regard is his right of action at the time of the commencement of the suit. The answer tendered issue on the question of ownership by denying that plaintiff was at any time or at all the owner or in possession of the property. The ownership thus becoming an issue, evidence was introduced thereon and the case was tried upon the theory of the issue thus joined. This sufficiently cured any defect that it may be conceived existed in the complaint. It is next urged that the complaint does not aver that the cutting of the canal and the failure to erect the dam was done without plaintiff's consent. But we are not advised of any rule of pleading which requires a declaration from plaintiff that an unlawful trespass was committed without his acquiescence. There is no presumption that a plaintiff consents to an unwarranted invasion of his personal rights or rights of property. For the third objection to the sufficiency of the complaint, appellants argue that it is not averred that any work was negligently done and that no facts are alleged from which negligence can be imputed. In this connection it is said that there is no averment that no dam or obstruction to the water of the river was erected, but only that no sufficient dam or other obstruction was erected. It is, of course, not necessary to aver in terms that an act was negligently done to state a cause of action in tort. Says Cooley (2 Elements of Torts, p. 19) : "One may become liable in an action as for tort, either: 1. By actually doing to the prejudice of another something he has no legal right to do; 2. By doing something he may rightfully do, but wrongfully or negligently doing it by such means, or at such time, or in such manner, that another is injured; 3. By neglecting to do something which he ought to do, whereby another suffers injury." The allegations of the complaint taken together amount to this: That the defendants cut a canal through the natural bank of the Sacramento River; after cutting the canal they failed to take proper precautions to prevent the waters of the river from flooding plaintiff's land; that the waters of the river did in fact flood plaintiff's land to his injury. The complaint was therefore sufficient to pass a general demurrer.

2. Notwithstanding the fact that Blauth, Goethe, and Silva were acting as trustees of the Reclamation District, they were responsible to plaintiff for the injury occasioned to his property by the negligent performance of their duty. The argument of appellants against this proposition is that the Reclamation District entered into a contract with the Dredging Company to do the dredging work; that the part which the defendants took was solely in their official capacity as trustees of the district; if the work was negligently performed the legal responsibility rests upon the district alone. But if a tortious act has been committed by an agent acting under authority of his principal, the fact that the principal thus becomes liable does not of course exonerate the agent from liability. It may be conceded that a liability was cast upon the principal. (*Hopkins* v. *Clemson College*, 221 U. S. 636, [35 L. R. A. (N. S.) 243, 55 L. Ed. 890, 31 Sup. Ct. Rep. 654].) But this fact in and of itself does not relieve from liability the agents of the Reclamation District who permitted or committed the wrong. Appellants rely upon that class of cases which hold that under circumstances where discretion is vested in public officers, those officers are not responsible for mistakes of judgment when they have honestly, though mistakenly exercised their discretion. The doctrine is thus stated by Chief Justice Taney in *Kendall* v. *Stokes*, 3 How. 98, [11 L. Ed. 506] : "A public officer is not liable to an action if he falls into error in a case where the act to be done is not merely a ministerial one, but is one in relation to which it is his duty to exercise judgment and discretion, even though an individual may suffer by his mistake." It is an unwarranted extension of this rule to seek to apply it to the exoneration of an officer for an act which would have been proper if performed by him with due care, but which has resulted in injury to another because of the performance by him without due care. *Green* v. *Swift*, 47 Cal. 536 (upon which appellants rely), was an action for damages brought by a property owner for injuries to his land because of the act of the commissioners of the state appointed under authority to rectify the channel of the American River. In so doing, they forced the waters of the river upon the land of plaintiff to its injury and destruction. A bare majority of the court rendered the decision in this case. It was said that "there is no question that the

work as done by the defendants was in point of execution done with proper care and skill.'' The reasoning of the opinion proceeds with the declaration that the work itself having been done with proper care and skill defendants are not responsible ''for injuries to others resulting from the work itself,'' and it concludes that such damage belongs to that class known as *damnum absque injuria,* the implication being that the state had the power to order the work done as a public convenience or necessity, and that the property owner whose lands were injured or destroyed in the process of the work was not entitled to redress under the constitutional provision forbidding the damaging or taking of private property for public use. The soundness of the conclusion in this case is open to grave question, in view of the later decision of the supreme court above cited. (*Hopkins* v. *Clemson College,* 221 U. S. 636, [35 L. R. A. (N. S.) 243, 55 L. Ed. 890, 31 Sup. Ct. Rep. 654].) The same may be said of *DeBaker* v. *Railway Co.,* 106 Cal. 257, [46 Am. St. Rep. 237, 39 Pac. 610], which cites *Green.* v. *Swift* as authority to the proposition that the agents in the performance of work of public character are exempted from liability for any direct or consequential damages to third persons which may arise from their execution of the work, provided they execute it with due care and according to the adopted plan. But giving to these cases all the weight as authority for which appellants contend, still it is apparent that they do not measure up to the contention which is advanced in this case. In this case the gravamen of the charge is that these agents did not exercise due care. In 47 and 106 California Reports it is expressly admitted that responsibility attaches to the agent if he has failed to exercise such care. *Ballerino* v. *Mason,* 83 Cal. 447, [23 Pac. 530], was an action against the assessor for damages, it being alleged that as assessor he ''willfully and against law'' assessed plaintiff's property at too large a sum. This court quoted the language of Chief Justice Taney as above given, held the complaint to be insufficient to charge that the assessor acted maliciously with intent to wrong or injure the owner, and declared that in the absence of such averment it must be assumed that the assessor simply erred in his judgment, and for such a mere error of judgment he was not responsible. To the same effect, under very similar circumstances arose the case

of *Gridley School District* v. *Stout,* 134 Cal. 592, [66 Pac. 785]. The principles to be deduced from the decisions in this state are that municipal corporations are not liable for dereliction or remissness of municipal officers or agents in the performance of public or governmental functions of the city, or in the performance of duties imposed upon those officers which are prescribed and limited by express law; and when an injury results from the wrongful act or omission of a municipal officer charged with duty prescribed and limited by law, the doctrine of *respondeat superior* is inapplicable. The officer is not treated as the agent or servant of the corporation in the performance of such duty, but is held to be the servant and agent of and controlled by the law, and while for his tortious acts he will be held responsible, the municipality will not. (*Sievers* v. *San Francisco,* 115 Cal. 648, [56 Am. St. Rep. 153, 47 Pac. 687].) Upon the other hand, if the act is one commanded by the municipality itself, if inherently wrong, the municipality and the agent who performed will both be liable. (*Brownell* v. *Fisher,* 57 Cal. 150; *DeBaker* v. *Railway Co.,* 106 Cal. 257, [46 Am. St. Rep. 237, 39 Pac. 610].) If the injury results, however, not from the wrongful plan or character of the work, but from the negligent or improper manner in which it is performed, the one so negligently acting will always be responsible, and the public corporation may or may not be responsible, depending upon the relationship which it may sustain to that agent. (*Conniff* v. *San Francisco,* 67 Cal. 45, [7 Pac. 41] ; *DeBaker* v. *Railway Co.,* 106 Cal. 257, [46 Am. St. Rep. 237, 39 Pac. 610] ; *Denning* v. *State,* 123 Cal. 315, [55 Pac. 1000] ; *Melvin* v. *State,* 121 Cal. 16, [53 Pac. 416].) One important principle, however, is to be noted in this connection. Wherever the injury complained of is the taking or damaging of private property for public use without compensation then under the guarantee of the federal constitution against such invasion of the private rights of property, neither the state itself nor any of its agencies or mandatories may claim exemption from liability. (Amendment Const. U. S., Art. V; *Hopkins* v. *Clemson College,* 221 U. S. 636, [35 L. R. A. (N. S.) 243, 55 L. Ed. 890, 31 Sup. Ct. Rep. 654].)

The case presented against these defendants is precisely that of *Brownell* v. *Fisher,* 57 Cal. 150, and *Bellegarde* v. *San*

*Francisco Bridge Co.,* 90 Cal. 180, [27 Pac. 20]. In the Brownell case the defendants, as here, were the trustees of a swamp land district and for the trespass charged against them they urged that they were acting as trustees of the district, were authorized by the district to perform the acts which were done, wherefore the district was responsible for the damages occasioned by their acts and not the defendants. In *Bellegarde v. San Francisco Bridge Co.,* the street contractor sued for damages, urged as a defense that he had not been guilty of negligence in the performance of the work but that the acts resulting in the injuries were justifiable and unavoidable in the prosecution of the lawful work authorized by the city and county of San Francisco. In both instances, to these asserted defenses, the answer of this court was the same, that regardless of the responsibility of the principals the agents were unquestionably responsible for the negligent performance of their duties.

3. The evidence established the negligence of the defendants in their failure to construct a suitable dam or fill to prevent the entrance into the cut or canal of the river water. The evidence showed that entering from the river the dredger made a cut fifty or sixty feet in width up to the levee, through the levee and along the side of respondent's ranch. Thereafter a small fill or dam was made between the excavation in the levee and the channel of the river. This fill was four feet below the natural bank of the river and but twelve or fourteen feet wide on top. Nothing further was done to obstruct the flow of the river or to protect the lands of the respondent. Thus, while theretofore respondent's lands had been protected by a levee situated from one hundred to one hundred and fifty feet from the natural bank, which levee was twenty to fifty feet on its base and about eight feet above the natural surface of the ground, the condition left by these defendants was a canal fifty or sixty feet wide cut twelve feet below the natural surface and dammed to prevent the intruding waters to a height not even level with the natural surface, but four feet below. It is in evidence that this fill or dam gave way, with the resulting overflow of the respondent's lands while the water in the river was below its natural bank level. There was a sand bar near to the mouth of this canal and the sand from this bar, by reason of the depth of the cut, was

drawn through it and deposited in great quantities upon plaintiff's land. Many subordinate questions in the case as to whether the sand was actually deposited through the cut or through breaks in the levee in front of plaintiff's place, which afterward occurred, were all submitted to the jury under conflicting evidence, and their findings are conclusive upon this court.

4. The Bay & River Dredging Company was not an independent contractor and the court was correct in instructing the jury to this effect. In cases where the nature of the contract between the parties establishing their relationship is in dispute, and the evidence thereon conflicting, the question of employee or independent contractor may properly be left to the jury under appropriate instructions from the court. But where the evidence is not conflicting and the contract between the parties is without dispute, the question of dependent or independent contractual relationship is one of law for the court. (*Green* v. *Soule,* 145 Cal. 96, [78 Pac. 337].) Such was the case here. The contract in terms was between the Reclamation District and the Bay & River Dredging Company, but it provided that the dredger of the company should be at a place to be indicated by the trustees of the district by a given date ''and from that time shall be under the direction and supervision of the said trustees, . . . and shall do the work of cutting itself from the Sacramento River into said district where and in the manner to be indicated by the said trustees, their superintendent or engineer. . . . After entering said district the said dredger 'Mogul' is to fill in a dam in the canal where the front of the levee has been cut and repair the same in such manner as may be indicated by said trustees, their superintendent or engineer.'' Enough has thus been quoted to show how entirely foreign the facts and the contract in this case are to those appearing in *Teller* v. *Bay & River Dredging Co.,* 151 Cal. 209, [12 Ann. Cas. 779, 12 L. R. A. (N. S.) 267, 90 Pac. 942], upon which appellants rely. In the Teller case it was sought to charge responsibility upon the Frankenheimers, farmers, inexperienced in dredging work, who simply employed a dredger to dig a ditch upon their land and who exercised no control over the dredger or its operations other than to indicate the location of the ditch. It was held that the dredging company was responsible as an independent

contractor and not the farmer. But under the contract in the present case the trustees not only in fact directed what should be done and how it should be done, but the very right of direction and control was reserved to them by the contract, even the right of control in the specific matter of repairing the cut in the levee made by the dredger.

5. Defendants' argument that the damages were caused by an extraordinary flood, an act of God, to prevent the consequences of which the exercise of ordinary care would not avail, is not supported by the evidence. The evidence establishes that while there was a high flood, indeed it may be said an exceptional flood, the dam in the canal went out before the river was even bank full, and that it was by reason of the inadequacy and insufficiency of this dam that sand in injurious quantities was drawn through the cut and cast upon plaintiff's land.

6. To prove damages, evidence of the difference in the market value of the land before and after the injuries complained of was admitted. No objection was made to this evidence, but after the witnesses had left the stand and the case was closed, defendants moved to strike out all the testimony. The motion was properly denied. (*People* v. *Samario*, 84 Cal. 484, [24 Pac. 283].)

7. The court instructed the jury fully and even elaborately, and the instructions were quite as favorable to the defendants upon all points as the law and the evidence warranted. Hedged about by the limitations which the court was careful to point out, to the effect that the jury could only award damages for the detriment or injury to the land which they found was caused by the negligent act of defendants, and that if other causes contributed to the injury, defendants were not responsible, it was not error to instruct the jury that the difference in the market value of the land before and after the damage was the measure of defendants' liability. If, as appellants contend, there was no permanent injury to the land, or if the land could have been cleared of its sand and cured of its other injuries, and if respondent could have been reimbursed for all his losses for an amount much less than the damages awarded, it would have been permissible for appellants, in mitigation of the damages claimed by plaintiff, so to have established by evidence. They did not undertake to

do so, or at least did not do so to the satisfaction of the jury, and appellants are therefore in no position here to complain.

8. The court erred in allowing interest upon the jury's award from the date of the injury. The damages were unliquidated until assessed by the jury, and only after judgment upon such assessment did legal interest run. (*Brady* v. *Wilcoxson*, 44 Cal. 239; *Hewes* v. *Germain Fruit Co.*, 106 Cal. 441, [39 Pac. 853]; *Ferrea* v. *Chabot*, 121 Cal. 233, [53 Pac. 689, 1092].)

The judgment is therefore modified by striking out the allowance of interest. In all other respects the judgment and order appealed from are affirmed. Respondent will recover costs upon this appeal.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.