[Civ. No. 2950. Third Appellate District.—February 10, 1926.]

H. O. NEWBERRY, Respondent, v. W. E. EVANS et al., Appellants.

[1] DRAINAGE DISTRICTS—POWER OF EMINENT DOMAIN—LEGISLATIVE AUTHORITY.—By subdivision 3 of section 1238 of the Code of Civil Procedure and section 14 of the act of 1903 (Stats. 1903, pp. 291, 295), the legislature has vested in all duly organized drainage districts the right to exercise the power of eminent domain, whenever it is found necessary to invoke that power for the accomplishment of the purposes for which they are organized.

---

1.  See 9 Cal. Jur. 922.

[2] ID.—TAKING OF PROPERTY—COMPENSATION TO OWNER—CONSTITUTIONAL LAW.—Unless the owner of property required for the purpose of drainage districts consents to the taking or damaging of his property by such public agencies for their use as such, those organizations must pursue the course outlined by section 14 of article I of the constitution and to be invoked according to the procedure adopted by the legislature for the purpose of facilitating the exercise of the right of eminent domain.

[3] ID.—CONSTRUCTION OF DITCH ACROSS PRIVATELY OWNED LAND—TRESPASS—DAMAGES—COMPENSATION TO LAND OWNERS—LIABILITY OF DIRECTORS.—The acts of the directors of a drainage district in entering upon the property of a land owner without his knowledge, consent, or approval and digging a ditch across his property, thereby causing damage to the land owner, without first making just compensation therefor, constitutes a trespass for which they are severally and jointly liable, authorizing the land owner to proceed against them as for a tort, even if the acts complained of were committed by them in their official capacity as such directors.

[4] ID.—ACTS DIRECTED TO BE PERFORMED BY DISTRICT—NEGLIGENCE OF OFFICERS IN PERFORMANCE—LIABILITY FOR.—Assuming that the injury to the property was not directly produced by the negligent performance of their duties by the officers of the drainage district, the district would not be immune from liability where the officers, in performing the work, did it precisely as the district itself outlined and expressly directed it to be done; and the acts which the district thus commanded its officers to perform being inherently wrong, the district and the officers who performed them are both liable.

[5] ID.—CAPACITY TO SUE OR BE SUED—STATUTORY CONSTRUCTION.—Under section 26 of the act of 1903 (Stats. 1903, p. 291), a drainage district is given express and specific authority to sue or defend in any action, which means that it may be sued as well as institute and maintain actions at law or suits in equity.

[6] ID.—CONSTRUCTION OF DITCH—WORK AUTHORIZED BY DISTRICT—CONSENT OF LAND OWNER — COMPENSATION — JUDGMENT AGAINST DIRECTORS.—In an action by a land owner against a drainage district and the directors thereof for damages for digging a ditch across his land without his consent and without making just compensation, the drainage district cannot be compelled to assume and satisfy a personal judgment against the directors, although the work itself had been planned and authorized to be done by the

3.   See 9 Cal. Jur. 922.
5.   See 9 Cal. Jur. 932.

district, in the absence of any showing that the district actually took the owner's property or was using it for its purposes.

[7] Id.—Injury to Real Property—Growing Trees.—Injury to trees by unauthorized acts of the directors of a drainage district in digging a ditch is injury to the real property upon which they are growing.

[8] Id.—Damages Caused by Unlawful Acts of Directors—Judgments—Payment from Funds of District—Diversion of Funds. In an action by a land owner against the directors of an irrigation district for damages for digging a ditch across his land without his consent and without making just compensation therefor, a personal judgment against the directors creates a presumption that they alone were concerned in the commission of the tort upon which said judgment is founded, and there being no showing that it was the legal duty of the district to pay said judgment, the land owners of the district had the right to treat the act of the district in satisfying said judgment out of its funds as involving a diversion by the directors of so much of said funds as were so taken and used from its lawful purposes.

[9] Id.—Individual Liability of Directors—Validity of Judgment.— In such action, the judgment was not void as to a director who was not a member of the board when damage to the owner's property was committed, or the work resulting in the damage was ordered to be done, or when the judgment was ordered paid, where it was not denied that he had a hand in causing the funds of the district to be wrongfully used in paying such judgment.

[10] Id.—Director not Member of Board When Judgment was Ordered Paid—Nonliability of—Parties.—In such action, if the director was not a member of the board when the judgment was ordered paid by the board from the funds of the district, and he in no other way assisted, advised, or abetted the act of the board in thus misappropriating the funds of the district, he was not a proper party to the action and could not be compelled to stand for any part of the loss sustained by the district by reason of the wrongful diversion of its funds by applying them to the payment of said judgment.

[11] Contribution — Voluntary Payment — Contracts. — Where an obligation arising out of contract has been paid and extinguished voluntarily by a party not obliged to pay it, the right of contribution cannot, as a rule, be invoked as against the person for whom such payment was made by the party thus making such payment.

11.  See 6 Cal. Jur. 504.

[12] ID.—JOINT TORT-FEASORS.—As a general rule, subject to some exceptions, the right of contribution does not apply as between joint tort-feasors.

[13] DRAINAGE DISTRICTS—EMPLOYMENT OF ATTORNEY AT LAW—ATTORNEY'S FEES.—An attorney at law who appeared for a drainage district in an action against the directors and the district for the unauthorized digging of a ditch across the owner's land and who continued to so act until the district ceased to be a party to the action is entitled to recover of the district the full sum which it agreed to pay him for his professional services in such action, in the absence of any showing that payment of his fees was to be contingent on the *quantum* of services rendered, and even though the directors of the drainage district, after the district ceased to be a party to the action, agreed to pay him out of their own pockets a fee or fees for his professional services to them.

[14] ID.—COSTS.—Costs and expenses incurred prior to the time at which the district was dropped from the action as a party defendant thereto constitute a proper charge against the district and should be so adjudicated in this action.

---

(1) 20 C. J., p. 536, n. 52. (2) 19 C. J., p. 703, n. 29; 20 C. J., p. 881, n. 89. (3) 19 C. J., p. 710, n. 79; 20 C. J., p. 1166, n. 46. (4) 19 C. J., p. 710, n. 73. (5) 19 C. J., p. 633, n. 53. (6) 19 C. J., p. 710, n. 73. (7) 32 Cyc., p. 656, n. 98. (8) 19 C. J., p. 710, n. 73. (9) 19 C. J., p. 710, n. 79. (10) 19 C. J., p. 710, n. 79. (11) 13 C. J., p. 824, n. 35. (12) 13 C. J., p. 828, n. 94, p. 829, n. 11. (13) 19 C. J., p. 632, n. 41 New. (14) 19 C. J., p. 632, n. 41 New.

APPEAL from a judgment of the Superior Court of Sonoma County. R. L. Thompson, Judge. Reversed.

The facts are stated in the opinion of the court.

W. F. Cowan and A. W. Hollingsworth for Appellants.

R. M. Barrett and C. W. Anderson for Respondent.

HART, J.—The Wilfred-Bellevue Drainage District, which is situated in the county of Sonoma, is, as its name implies, a drainage district, and was organized and is existing as such under and by authority of the laws of the state of California. (See Stats. 1903, p. 291, and Stats. 1915, p. 1321.) At all times mentioned in the pleadings and the evidence,

---

12. See 6 Cal. Jur. 512; 6 R. C. L. 1054.

the defendants, other than defendant Morken, were duly elected and acting members of the board of directors of said District. The times at and during which said Morken became and acted as a member of the said board will later be shown.

The plaintiff, prior to and at the time of the institution of this action, was the owner of real property situated within the boundaries of said Drainage District and which has been, at all the times mentioned in the complaint, assessed for the payment of taxes in and to said District, "and taxes thereon during said period have been and now are paid by this plaintiff into the treasury of said drainage district."

It appears that, at some time prior to the first day of January, 1921, the board of directors of the said Wilfred-Bellevue Drainage District (hereinafter, for convenience and brevity to be referred to as "the District" or the "Drainage District") by due proceedings, and in furtherance of the purposes and objects of the District, ordered the engineer thereof to survey and lay out a route for the construction of ditches as a part of its system of drainage. In compliance with the direction thus given, the said engineer (L. L. Mills by name) proceeded with the work of laying out and establishing the line or lines along which the ditches were to be constructed. Among the ditches so laid out was one designated in the field-notes of the engineer as "Ditch No. 2." The line of said ditch was started, and as later constructed starts at a point about a quarter of a mile north of what is known as Bellevue station, a railroad station of the Northwestern Pacific Railroad, "and runs along the easterly side of the railroad right of way" through the property of one F. W. Wilson, "from the northerly property line of said land to the southerly line thereof and parallel to and at a distance of about three feet from the westerly line of said land." Said ditch, as above indicated, was constructed over and along the line or route as marked out by the survey made by said engineer.

On the twenty-eighth day of July, 1921, the said F. W. Wilson brought an action against the Drainage District and the defendants in the present action, as the board of directors of said District, the purpose of which was to recover damages for damage alleged to have been produced by the defendants in the building of said ditch to that portion of

his said land through and over which said ditch No. 2 was constructed and maintained and also for damage alleged to have been likewise caused to a certain number of pear trees then growing on said land. Subsequently to the bringing of said action—on March 13, 1922—Wilson filed a third amended complaint, but omitted therefrom the Drainage District as a defendant, thus leaving therein as the only parties defendant to the action Evans, Pedrotti, and Morken, the defendants in the present action. The said third amended complaint in that case alleged, among other things, that the defendants therein (and herein), on the first day of January, 1921, while acting as trustees in the management, control, and operation of said Drainage District, without the knowledge, consent, or approval of plaintiff, "did then and there wrongfully dig and construct a ditch over and through the land of plaintiff (said land being specifically described in said complaint) along the line of said land," as above indicated, said ditch as so constructed being 675 feet in length and of the width of 4 feet and of the depth of 4 feet. Several different items of damage to a certain number of trees on said land and to the land itself are specifically alleged and described, all amounting, in the aggregate, as stated in money, to the sum of $1,000, for which judgment was prayed.

The answer to said complaint, after certain denials, alleged that in the years 1920 and 1921 the Drainage District was engaged in the construction of a system of drainage for said District, and to that end caused surveys to be made for its drainage ditches; that one of the ditches so surveyed and laid out was the one which was to be constructed for the purpose of carrying water from a large territory north of the lands of plaintiff and across said lands, "thence southerly for a long distance until the same was discharged into a large body of water called the Laguna"; that defendants notified the plaintiff in said action (Wilson) of the necessity for the use of the portion of his lands over which said ditch was to pass as a part of the drainage system which had been outlined and that the said plaintiff thereupon consented to the construction of said ditch along the line of the survey thereof and over and through his said lands and directed defendants to proceed with the work of constructing said ditch; that he knew at all times "the identical place where the said ditch was to be constructed and of its proximity to the westerly

row of pear trees on said lands." Upon the issues thus made by the pleadings the cause came on for trial on the twelfth day of September, 1922, before the court sitting without a jury, and on the twenty-fifth day of April, 1923, judgment was entered upon the findings and conclusions of law in favor of the plaintiff in said action (Wilson) for the total sum of $325 and costs. The court found in that action that the defendants, "while acting as Directors . . . of said Drainage District, and without the consent or approval of plaintiff herein, entered upon the land of plaintiff as particularly described in the third amended complaint," and wrongfully dug and constructed the ditch in question. It was further found (finding 1) that the direct result of the construction of said ditch was the destruction of the westerly row of pear trees growing on Wilson's said land, and that the damage to said trees amounted, as stated in money, to the sum of $325. The court further found in said action: "That the lands of the plaintiff (Wilson) apart from the damage to the pear trees thereon, as above set forth in finding 1, have not been damaged by reason of the construction of said ditch by the said defendants." As a conclusion of law, the court found that "the defendants are liable personally for the damage to the trees of plaintiff," etc. No appeal was taken from the judgment therein entered.

It appears from the record in the instant case that the defendant Morken was not a director of the Drainage District at the time the preparatory steps for building the ditch in question were taken, he having been appointed a member of the board of directors of the said District by the board of supervisors of Sonoma County on June 14, 1921, to fill a vacancy occurring in the board of directors. It further appears that, on February 7, 1923, an election was held by the landholders of the District for the purpose of electing a director in the place and stead of said Morken, his term being then about to expire. At said election Morken and one Chas. Bacon were rival candidates for said office of director, and upon a canvass by the board of directors of the returns of the election so held, it was found that Bacon received the highest number of votes cast at said election for said office and was by said board declared duly elected thereto. A certificate of election was thereupon duly issued to Bacon, who, having duly qualified, assumed the duties

of his office as director of the District on the sixth day of March, 1923, in the place and stead of Morken, defendant herein. On June 5, 1923, at a regular meeting of the board of directors, all the members thereof (Pedrotti, Evans, defendants in the present, as also in the Wilson action, and Bacon, successor of Morken as director being present), the matter of the Wilson judgment was called up for consideration. The minutes of said meeting read, in part: "A judgment of $325.00 having been awarded F. W. Wilson in his damage suit and costs of $82.00, it was decided to pay same out of the Construction Fund in favor of W. F. Cowan (attorney for defendants in the Wilson as well as in the present action) and let him settle with Wilson's lawyers. Wilson agreed to discount $25.00 from the amount awarded, so a warrant for $382.00 was drawn out of the Construction Fund in the name of W. F. Cowan." Wilson accepted the above-stated amount as in full payment and satisfaction of his judgment against the defendant directors and the same was duly and regularly satisfied.

The present action was brought by plaintiff, who, as shown above, was a land owner and a taxpayer in and to said District, and on behalf of the District, for judgment in favor of the latter in the sum of $791.30, being the sum alleged to have been taken and diverted from the funds of the District by said defendants to pay, and with which, it is alleged, they did pay and satisfy the judgment rendered against them in the action of F. W. Wilson against said defendants and certain costs, attorney's fees, and other expenses incurred by them in said action, and for costs incurred herein by said plaintiff.

The complaint herein proceeds upon the theory that the judgment obtained against the defendants in the Wilson case was wholly a personal judgment and in no manner or form bound the Drainage District, which, as seen, was pretermitted as a party to said Wilson action by the third amended complaint, upon which, together with the answer thereto, said action was tried and judgment entered against the defendants herein alone, and that the appropriation of the moneys of the Drainage District by the board of directors to the payment and satisfaction of the Wilson judgment and the costs, attorney's fees, and other expenses incurred therein by the defendants, constituted a misappropriation or wrongful diversion by the

latter, as the directors thereof, of the funds of said District. The complaint briefly, but with sufficient fullness, relates the history of the Wilson litigation and the causes leading to the action by Wilson and also contains a statement of the issues therein tried and decided, and the fact that the Drainage District was dropped from said action as a party thereto before the issues of fact therein were tried. The complaint also sets forth in detail the items of costs, attorney's fees, and other expenses incurred in the Wilson suit which, it is alleged, were included within the amount of the judgment in the Wilson case, as compromised and satisfied in the total sum alleged to have been wrongfully taken from the funds of the Drainage District and misappropriated by defendants.

The answer admits that Evans and Pedrotti were at all times mentioned in the complaint directors of said District, but declares that the defendant Morken, at the time of the commission of the alleged trespass upon which the Wilson action was founded, was not a director of the Drainage District, "and is not now a director of said . . . district, although at the time of the commencement of said action by said Wilson and at the time of the rendition of the judgment therein, the said Morken was a director of said drainage district." The judgment in the Wilson action against defendants is admitted, as is also the payment by defendants out of the funds of the Drainage District of said judgment and the costs, attorney's fees, and other expenses incurred in the Wilson action, as specified in the complaint, but the answer alleges that the acts of said defendants upon which the action by Wilson was based were not oppressively committed or with the intent to or purpose of injuring the said Wilson or his property, but that said acts were within the scope of the authority of said directors, were caused to be done by defendants solely in their capacity as directors of said District and "for the use and benefit of said drainage district"; that the Wilson judgment was paid by said Drainage District "with full knowledge of all the facts upon which the said judgment was based and with full knowledge that each and every act performed by said personal defendants was performed for the use and benefit of said drainage district and that said district did fully ratify and approve said payment."

Among the court's findings are the following:

"That for the purpose of defending said action of *Wilson,* plaintiff, vs. *Evans, Pedrotti and Morken,* defendants . . . the defendants for their own benefit and not for the use of or on behalf of said Drainage District, incurred obligations and expenses for court costs, attorneys fees, witness fees, meals for witnesses, court reporter's fees, automobile hire, surveyor's services and photographs, and for all of said expenses, said defendants caused demands to be filed against the said Wilfred Bellevue Drainage District. That defendants Evans and Pedrotti, acting as a majority of the Board of Directors of said District, allowed, audited and ordered warrants drawn for each and all of said demands . . . and that warrants were drawn. . . . That each and every one of said demands (which are set forth in the Finding) were allowed and ordered paid by defendants Evans and Pedrotti acting as a majority of said Board of Directors. . . . That prior to the commencement of this action, said warrants were paid out of the funds of the Wilfred Bellevue District and that the treasury has been depleted in the aggregate amount of the judgment and of the costs.

"That it is not true that each and every act and thing done and performed by the said defendants in and about the premises and upon which the said action of *Wilson* vs. *Evans et al.* was based, was done for and on behalf of and for the use and benefit of said drainage district. . . . That it is not true that the said judgment and expenses were paid by the drainage district with full knowledge of the facts upon which the judgment was based. . . . That it is not true that the drainage district fully or otherwise ratified and approved said payment."

The court further found that defendants Evans and Pedrotti "were at all times herein mentioned directors of the . . . Drainage District," but that defendant Morken, at the time of the commission of the trespass complained of in the Wilson action, was not a director of the Drainage District "and is not now a director of said drainage district, although at the time of the commencement of said action by said Wilson and at the time of the rendition of judgment therein, the said Morken was a director of said drainage district." The court also expressly found that Morken joined Evans and Pedrotti in causing a warrant to be issued and

drawn upon the funds of the District and payable to W. F. Cowan for the purpose of using the money so obtained in payment of the Wilson judgment.

The conclusions of law are, in part, as follows:

"1. That the judgment in the case of *Wilson* vs. *Evans, Pedrotti and Morken* heretofore mentioned was and is a personal judgment against said defendants individually and that said judgment has never been appealed from, modified or reversed in whole or in part. That the principal of said judgment, together with costs, expenses and attorney's fees and all other charges and expenses in connection therewith and heretofore in the Court's findings of fact specifically mentioned, were in truth and in fact charges and expenses against said defendants Evans, Pedrotti and Morken individually and that said defendants were individually liable for all thereof."

The court further concluded as a matter of law that, by reason of the payment by defendants from the funds of the District of the judgment in the Wilson case and the costs, attorney's fees, and other expenses accruing against defendants in said action, the treasury of the Drainage District "has been unlawfully depleted in the sum of $757.80," etc., and that the Drainage District is entitled to judgment against the defendants and each of them for said amount. Judgment was entered accordingly. A motion by the defendants for a new trial was denied, and they appeal from said judgment, supporting said appeal by a record prepared in conformity with the requirements of the so-called alternative method.

[1] The legislature has vested in all duly organized drainage districts the right to exercise the power of eminent domain whenever it is found necessary, for the accomplishment of the purposes for which they are organized, to invoke that power. (Sec. 1238, subd. 3, Code Civ. Proc.; sec. 14, Stats. 1903, pp. 291, 295, under the provisions of which the District spoken of herein was organized.) [2] The constitution provides that "private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner." (Art. I, sec. 14, Const.) Thus it is clear that, unless the owner of property required for the purposes of such districts consents to the taking or damaging of such property by such

public agencies for their use, as such, the one course which
those organizations must pursue in order to secure the legal
right to take or damage such property is that outlined by the
constitution and to be invoked according to the procedure
adopted by the legislature for the purpose of facilitating the
exercise of the right of eminent domain.   [3]   It, therefore,
cannot be denied that the acts of the defendants in entering
upon the property of Wilson and digging a ditch over and
across said property, under the circumstances as indicated
or disclosed by the findings in Wilson's action against them,
constituted a trespass for which they were severally and
jointly liable.   And this is so even if the acts complained of
were committed by the defendants in their official capacity
or as directors of the Drainage District.   "One, acting in
his official capacity, is individually liable for the negligent
discharge of his duties."   (*Proper* v. *Sutter Drainage Dist.,*
53 Cal. App. 576, 581 [200 Pac. 664, 666] ; *Perkins* v. *Blauth,*
163 Cal. 787 [127 Pac. 50].)   Of course, that rule applies
as well where the wrong has occurred as the result of an act
involving no element of negligence as where the wrong com-
mitted is the direct result of the negligence of the person
committing the wrong.   "One may become liable in an
action as for tort by actually doing to the prejudice of an-
other something he has no legal right to do."   (2 Cooley on
Elements of Torts, p. 19; *Perkins* v. *Blauth, supra.*)   Wil-
son, therefore, was authorized to proceed, as according to the
complaint in his action he did proceed, against the defendants
as for a tort.   There is not, however, serious, if any, con-
troversy between the parties as to those propositions.   The
controversy here revolves around the general proposition, as
advanced by the appellants, that, since it was made to appear
by the answer to the complaint in the Wilson action and the
answer to the complaint in the present action, as well as
by evidence received in this action, the damage to the Wilson
property was the direct result of acts by the directors of the
Drainage District which were expressly directed to be done
by the District, in the exercise of its authority to establish a
system of ditches necessary to carry out the purposes of its or-
ganization, and were for the sole benefit and use of the District,
it was within the legal right or authority—indeed, a legal
duty—of the District to pay and satisfy the judgment for dam-
ages awarded in favor of Wilson and against the directors for

the damage resulting from the commission of those acts. With
the predicate of that proposition established there could be
no legitimate controversy as to its soundness as a matter of
right and justice. From the answer to the complaint in the
Wilson case and the answer to the complaint and the uncon-
tradicted evidence in the present case, it is clear that the
directors of the Drainage District (defendants herein and
in the Wilson case) were, when committing the acts of tres-
pass complained of by Wilson, acting under the direct au-
thority or instructions of the Drainage District with respect
to a matter falling within the general scope of the purposes
and powers of the latter. The act of the District in caus-
ing a survey of the ditch was not *ultra vires*. But, in at-
tempting to exercise a power lawfully conferred upon it, to
wit, the taking (if it did take) or damaging of private prop-
erty for a public use and its own benefit, the District itself,
acting through its board of directors, without the consent of
the owner, and without first making to him just compensation
therefor, as prescribed by the constitution, committed a
wrong for which it was liable to the owner. Such, we say,
was the case as it was presented by the pleadings of defend-
ants in both cases and the evidence in this. Therefore, as
thus disclosed, it was not a case where injury to the property
of another was directly or at all produced by the negligent
performance by the officers or agents of a public mandatory
of the duties as such officers or agents. [4] Assuming,
though, that the case upon the facts was of the latter class,
the District would not be immune from liability, since the
officers and agents of the District in performing the work
did it precisely as the District itself had outlined and ex-
pressly directed it to be done. In other words, the injury
to the property of Wilson resulted from the work itself as it
had been planned and authorized to be done by the District
and not from any negligence of the officers or agents of the
District in performing the work. The act or acts which thus
the District commanded its officers or agents or employees
to perform being inherently wrong, the District and the
officers or agents or employees who performed the act or
acts are both liable. (*Perkins* v. *Blauth,* 163 Cal. 782, and
cases therein cited at p. 789 [127 Pac. 50]; *Weisshand* v.
*City of Petaluma,* 37 Cal. App. 296, 307 [174 Pac. 955];
*Western Assur. Co., etc.,* v. *Sacramento & San Joaquin*

*Drainage Dist.,* 72 Cal. App. 68 [237 Pac. 59, 63].) Hence, from any of the several viewpoints of the case as thus considered, the Drainage District, having originally been made a party defendant in the action by Wilson, ought to have been retained in that action as a defendant. Indeed, if the District actually took the land of Wilson and has been or is using it for its purposes as a Drainage District, the action of Wilson should be treated as having been in effect a condemnation proceeding instituted by the District for its own necessities, and, therefore, required to pay or stand for the damages awarded against the defendants in said action. It is not in the present connection inappropriate to say, in reply, to the contention of respondent to the contrary in that particular, that there was no legal impediment to the making of the District a party defendant to the Wilson action. Section 26 of the Statute of 1903, *supra,* provides that ''in all courts, actions, suits, or proceedings, the said board (of directors) may sue, appear and defend in person or by attorneys, and in the name of such drainage district.'' [5] Thus the District is given express and specific authority to sue or to defend in any action, which means, of course, that it may be sued as well as institute and maintain actions at law or suits in equity. The cases cited by respondent, as supporting the view that the Drainage District could not legally have been made a defendant in the Wilson suit are *Proper* v. *Sutter Drainage Dist. et al.,* 53 Cal. App. 576 [200 Pac. 664]; *Perkins* v. *Blauth,* 163 Cal. 782 [127 Pac. 50]; *Brunson* v. *Santa Monica,* 27 Cal. App. 89 [148 Pac. 950]; *Brownell* v. *Fisher,* 57 Cal. 150; *Hopkinson* v. *Clemson Agricultural College,* 21 U. S. 636 [35 L. R. A. (N. S.) 253, 55 L. Ed. 890, 31 Sup. Ct. Rep. 654, see, also, Rose's U. S. Notes]. Those cases, however, had to do with state agencies or public mandatories, the right to sue which had not been authorized by the legislature.

[6] But the situation as it is presented here is such as to preclude us from holding that the District should be compelled to assume and satisfy the Wilson judgment. While, as seen, there is testimony in the present record showing that the damage done to the property of Wilson, for which the judgment in his action against the defendants awarding him damages was given, was an incident of an attempt upon the part of the Drainage District to take the property for a

public use and its benefit, still there is no evidence herein that the District actually took the property or is using or ever used it for its purposes. Turning to the judgment-roll in the Wilson case, we find nothing in the findings to the effect that the land was taken and was being used by the District as a part of its drainage system. To the contrary, it was therein expressly found that, while certain trees growing and standing on the land alleged in the complaint of Wilson were injured by the acts of the defendants, it is also found that "the lands of the plaintiff have not been damaged by reason of the construction of said ditch by the defendants." [7] Of course, injury to the trees was, in law, injury to the real property upon which they were growing, but by the finding it was evidently intended to declare that the soil itself was not injured. Indeed, construing the finding by the light of the complaint in that case, it would be the reasonable inference that neither the soil nor the fee to the land was taken for the uses of the District. The complaint in that case, as has above been shown, segregated or divided the damage alleged and the damages claimed into two distinct items, to wit: damage to the trees, $500 damages; damage to the land, $500 damages. The court, in its findings, it will be perceived, followed the segregation thus made by the complaint, and, as stated, it seems to us that the reasonable construction of or the more rational inference from the finding as to damage is that there was no taking of the land. [8] But, regardless of all those matters, the fact is that, notwithstanding that it is found that the defendants, while acting as directors of the District and in control of its affairs, committed the trespass, the judgment is exclusively against them as a personal judgment. The judgment is, of course, buttressed by all the presumptions and intendments which apply to all judgments which, upon their face, are not void, and, while it is true that a party suing only one or two of a greater number of tort-feasors is not for that reason barred from suing any against whom he has not proceeded, unless a judgment he has secured against those sued has been satisfied or his right of action against those not sued is barred by the statute of limitations, it is equally true that it is to be presumed from the judgment in the Wilson action that the defendants alone were concerned in the commission of the tort upon which said judg-

ment is founded. And there is no showing in the present action which would justify the conclusion that it was the legal duty of the District to pay the Wilson judgment, and the land owners of the District, so far as the present case is made to appear here, had the right to regard and treat the act by the District in satisfying said judgment out of its funds as involving a diversion by the directors of so much of said funds as were so taken and used from its lawful purposes. As before suggested, if the defendants, under allegations in their answer to that effect, had shown that the District had taken and was using the land of Wilson for its purposes—that is to say, if it had been made to appear in the present action under an issue appropriately made and tendered that, by virtue of the Wilson judgment or under the compromise between Wilson and the District whereby Wilson accepted, as in satisfaction thereof, less than the judgment called for, the District was to have and own and use for the purpose of its drainage system the land alleged in the Wilson action to have been damaged—then, in that case, the payment of the Wilson judgment by the District would not only be just but, upon the theory that it amounted to the taking of property by the District for its use as a Drainage District, would be legally proper.

[9] The contention that the judgment in the present case, in so far as it involves and affects the defendant Morken, is void, cannot be sustained. While said judgment as to Morken may be voidable or erroneous or not justified, it is not void. This point, however, is predicated upon the finding herein that Morken was not a member of the board of directors when the damage to Wilson's land was committed, or the work resulting in the damage was ordered to be done. There is also evidence tending to show that Morken had nothing to do with the act of taking and using money from the funds of the Drainage District to pay the Wilson judgment. And, as pointed out above, the evidence without conflict shows that Morken, at the time the payment of the Wilson judgment was ordered and caused by the directors to be made out of the funds of the District, was not a member of the board of directors. The action by the plaintiff, as is manifest, is one for the recovery for the District from the defendants of the moneys which it is alleged in the complaint were illegally paid out of the funds of the District

by the defendants to satisfy the Wilson judgment against the defendants, and the question is, not whether Morken committed or was connected with the commission of the damage to Wilson's property, but whether he caused or in any way assisted in causing a wrongful use of the District's funds in the manner as alleged in the complaint. The answer, however, sets up a special defense in the nature of a plea in confession, and avoidance for all the defendants, including Morken, and amounts to a collateral attack upon the judgment in the Wilson case. Therein the fact of the use of the money by the defendants to pay the Wilson judgment is admitted, but it is sought to justify the action of the defendants in so using the funds of the District by the plea that the damage to the property of Wilson was alone caused by the District and that, therefore, in paying the judgment of Wilson against the defendants, the District did only what legally it ought to do. As to defendant Morken, nowhere is there in the answer any denial by or for him of the charge in the complaint that he had a hand in causing the funds of the District to be used in paying the Wilson judgment, and thus he is deemed to have admitted that he, in conjunction with his codefendants, caused the payment of the Wilson judgment to be made from the funds of the District. The court found accordingly. **[10]** While upon such admission the judgment can stand, and could still have stood even if the court had failed to make a specific finding as to that matter, yet, if it be true, as the evidence received in the case seems to indicate is true, that Morken was not a member of the board of directors when the judgment in the Wilson case was ordered and caused by said board to be paid from the funds of the District, and he in no other way assisted, advised, or abetted the act of the board of directors in thus misappropriating the funds of the District, he was not a proper party to this action and could not, and should not, be compelled to stand for any part of the loss sustained by the District by reason of the wrongful diversion of its funds by applying them to the payment of said judgment. Of course, it would not be argued, assuming that Morken took no part in causing the District to pay the Wilson judgment, that the payment of said judgment with the funds of the District would place Morken in the position of one whose obligation has been paid by another, and that

having accepted the benefit of the payment of said judgment with the District's money, he became a debtor of the District by reason of such payment and should be required to pay the District the debt thus arising against him. **[11]** Where an obligation arising out of contract has been paid and extinguished voluntarily by a party not obliged to pay it, the right of contribution cannot, as a rule, be invoked as against the person for whom such payment was made by the party thus making such payment. ''No one can be made a debtor for money paid to his use, unless it was done at his request, or unless the party paying the money was bound as a surety, or otherwise, to pay it for him.'' (6 Cal. Jur., sec. 6, pp. 504, 505.)   Nor will it seriously be contended that Morken may be held liable to the District for a proportionate part of the moneys paid out of its funds to extinguish the obligations of the Wilson judgment under the right of contribution, assuming that the District paid said judgment upon the theory and admission that it, with the defendants, committed the damage complained of by Wilson, or even if the District was, had been, or were to be made, if it could now be made, a party to the action. **[12]** The general rule is that the right of contribution does not apply as between joint tort-feasors.   There are, however, some exceptions to the general rule.   (6 R. C. L., sec. 17, p. 1054.)   But there is not presented here a case falling within any of the exceptions which, it has been held, qualify the general rule.

But, as above declared, the judgment here as against Morken is well supported upon his implied admission that, jointly with his codefendants, he did cause the funds of the District to be drawn upon and used in the payment of the Wilson judgment against him and his codefendants, as alleged in general terms in the complaint.   It is not impossible or improbable that, although not a member of the board of directors at the time the Wilson judgment was ordered paid and was paid from the funds of the District, he could in some way—advising and abetting the act—have taken part in causing the moneys of the District to be used in the payment of said judgment.   In other words, he could, even though not a director, have wrongfully and knowingly conspired with or otherwise induced the directors to betray their trust by a wrongful use of the trust property, in order himself to escape payment of a judgment which imposed upon

him a several liability. The judgment, however, must be reversed because of the inclusion therein, as moneys of the District illegally used, of certain expenditures by the District in connection with the Wilson litigation while the District was still a party thereto, and we, therefore, suggest that the case should be tried upon amendments to the answer, if defendants be so advised, which will justify inquiry into these propositions, to wit: 1. Whether the District, by the compromise of the Wilson judgment, secured the land or the right to use the land damaged and has been or is now, as the effect of such compromise, in possession and control, either as owner or otherwise, and using the same for the purposes of its drainage system; 2. Whether defendant Morken was in any way connected with the alleged wrongful appropriation of the funds of the District to the payment of the Wilson judgment. Justice plainly demands that these matters should be fully gone into. If the District is now or has been, under the compromise of the Wilson judgment, in the enjoyment of the right to use the land of Wilson alleged in his complaint to have been damaged by defendants, then the District should be held to have taken said land according to the principles underlying the doctrine of eminent domain and should be required to stand for the payment of the Wilson judgment, as compromised.

[13] Now, as to the ground upon which a reversal must be ordered. As seen, when the action was first filed in the superior court, the District was a party defendant to the Wilson suit, and the District, acting through its board of directors, entered into a contract with Cowan whereby he was to defend the District in said action for a fee of $200. Of course, the board had the legal right to make that contract with Cowan, and, as he appeared for the District as its attorney in said litigation and continued so to act until the District was eliminated as a party defendant thereto, and, furthermore, as there is no showing to the effect that, whether the payment to him of the full sum of $200 or any less sum than that was to be contingent on the *quantum* of service he should render the District therein, it is clear that the District is under obligation to pay him the full sum which it agreed to pay him for his professional services in said action. And this would still be true even if, after the District ceased to be a party to the action, the defendants

agreed to pay him out of their own pockets a fee or fees for his professional services to them. In so far as it failed to recognize the validity of the contract between Cowan and the District for the payment by the latter of the sum of $200 to the former for his services in the Wilson action and added to the judgment against defendants herein said sum of $200, said judgment cannot, upon the present record, be upheld. [14] Furthermore, there are certain items of costs and expenses which the record before us discloses were incurred prior to the time at which the District was dropped from the Wilson action as a party defendant thereto. All costs and expenses legitimately and necessarily incurred in the Wilson action while the District was a party would manifestly constitute a proper charge against the District and should be so adjudicated in this action.

The judgment is reversed, with direction to the trial court to grant leave to the defendants, or any one of them, if they or he be so advised, to amend their answer in the particulars hereinabove specified or suggested, or to set up any proper special defense to the claims of the complaint herein which may, according to their judgment, be available to them under the facts of the several transactions leading to the present controversy.

Plummer, J., and Finch, P. J., concurred.